## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20993-CIV-LENARD/GOODMAN

**HANS MOISE,**

     Plaintiff,

**v.**

**MIAMI-DADE COUNTY,**

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D.E. 67)

     **THIS CAUSE** is before the Court on Defendant Miami-Dade County's Motion for Summary Judgment, ("Motion," D.E. 67), filed May 25, 2018.  Plaintiff Hans Moise filed a Response on June 22, 2018, ("Response," D.E. 72), to which Defendant filed a Reply on July 12, 2018, ("Reply," D.E. 76).  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

I.     **Background**

a.     **Relevant facts[1]**

Defendant Miami-Dade County ("Defendant" or "the County") is a political subdivision of the State of Florida.  (Pl.'s Facts ¶ 1.)  The County is comprised of twenty-five departments including the Community Action and Human Services Department ("CAHSD"), which is responsible for providing social service programs throughout the County.  (Id.)  Lucia Davis-Raiford is CAHSD's Director.  (Id. ¶ 2.)  Only Director Davis-Raiford has the authority to hire CAHSD employees, and she can only hire applicants that have been interviewed and selected from a qualified eligibility list approved by the County's Human Resource Department.  (Id.)

In 1990, Congress enacted the National Community Service Act of 1990 ("Service Act"), as amended 42 U.S.C. § 12501 et seq., providing for the AmeriCorps program. (Id. ¶ 4.)  AmeriCorps members perform services pursuant to the Service Act working for

---

[1]     The following facts are gleaned from Defendant's Statement of Material Facts, ("Def.'s Facts," D.E. 66), and Plaintiff's Response to Defendant's Statement of Material Facts and Additional Disputed Facts, ("Pl.'s Facts," D.E. 71).  All facts are undisputed unless otherwise noted.

However, the Court is compelled to note that throughout his Response to Defendant's Statement of Facts, Plaintiff purports to dispute facts but (1) does not explain the basis for the dispute, (2) cites to no evidence, (3) cites to irrelevant evidence, and/or (4) cites to relevant evidence that supports Defendant's statement.  Purporting to dispute a statement without explaining the basis or providing evidentiary support for the dispute, aside from being unhelpful, does not establish a genuine issue of material fact.  See Fed. R. Civ. P. 56(c)(1) (providing that a party asserting that a fact is genuinely disputed "must support the assertion by" citing evidence or showing that the materials cited do not establish the absence of a genuine dispute; S.D. Fla. L.R. 56.1(a)(2) providing that the non-movant's statement of material facts asserting the existence of a genuine issue to be tried "shall . . . [b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court"; Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) ("There is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor.") (emphasis added).

community not for profit organizations.  (<u>Id.</u>)  AmeriCorps is administered by The Corps Network ("TCN").  (<u>Id.</u>)  In 2014, supplemental funding for the hiring of AmeriCorps members over the age of 25 became available.  (<u>Id.</u> ¶ 5.)  This initiative provided not for profit organizations with funds for AmeriCorps members that are 25 years of age or older.  (<u>Id.</u>)

The Greater Miami Service Corps ("GMSC") is a Florida 501(c)(3) not for profit corporation based in Miami, Florida that is governed by a Board of Directors.  (<u>Id.</u> ¶ 6.) The Board appoints a Chair who, in turn, appoints an Executive Director who must be approved by a majority vote of the Board.  (<u>See id.</u>; GMSC Bylaws (D.E. 66-9) ¶¶ 5.1.1. 5.1.5.)  GMSC receives federal, state, and local funding and has a yearly budget of about $2.45 million.  (<u>Id.</u>)  It presently operates from two locations, including one at 810 N.W. 28th Street in Miami.  (<u>Id.</u>)

Pursuant to a 2012 agreement, the County provides GMSC management and administrative support, including payroll services and records maintenance.  (<u>Id.</u> ¶ 7.) The County also provides GMSC workers compensation coverage through the County's Self Insurance Program.  (<u>Id.</u>)  GMSC reimburses the County for these contracted services.  (<u>Id.</u>)

GMSC is a host for AmeriCorps programs.  (<u>Id.</u> ¶ 8.)  GMSC's mission is to "engage out of school young people with employment training services that reconnect youth to education, community employment and towards self-sufficiency."  (<u>Id.</u>)  GMSC participants receive guidance from adults who serve as mentors.  (<u>Id.</u> ¶ 8.)

In 2015, GMSC entered into a Subgrantee Agreement with TCN for the AmeriCorps Opportunity Youth Service Initiative ("AmeriCorps OYSI Initiative"), which provides young adults meaningful civil engagement and community service experience. (Id. ¶ 10.) Pursuant to the Subgrantee Agreement, GMSC received a federal grant of $232,093 to host the AmeriCorps OYSI Initiative. (Id.)

On March 21, 2016, Plaintiff signed the Member Orientation Verification Form indicating that he had attended an AmeriCorps orientation at GMSC for AmeriCorps' OYSI Initiative. (Id. ¶ 11.) At the time, Plaintiff was sixty-one years old. (See Pl.'s Dep. at 4:24.)

On March 28, 2016 Plaintiff signed the AmeriCorps Enrollment Form, the GMSC Criminal History Check Consent & Disclosure Form, the AmeriCorps Determination of Economic Status Form, and the AmeriCorps OYSI Service Agreement. (Id. ¶¶ 12-13.) The AmeriCorps OYSI Service Agreement is between GMSC, AmeriCorps, and Plaintiff, and sets forth the terms and conditions of Plaintiff's AmeriCorps service.[2] (Id.) The Parties dispute whether Plaintiff also signed the GMSC OYSI Corps Member Position Description & Responsibilities Form, (compare id. ¶ 12 with Pl.'s Facts ¶ 12); which includes Plaintiff's handwritten name but not his signature, (see D.E. 66-15). Plaintiff asserts that GMSC's Post-Secondary Coordinator, Kim McNaught, told Plaintiff that he was already Defendant's employee, completed all of these forms for him, and told

---

[2]    Plaintiff appears to dispute that the OYSI Service Agreement did not set forth the terms and conditions of Plaintiff's AmeriCorps service. Plaintiff states that the OYSI Service Agreement—which bears his name, his initials, and his signature—was for 18-25 year-olds because GMSC did not have an OYSI Service Agreement for mentors. (Pl.'s Facts ¶ 14.)

him to sign the documents so that it was easier for him to transfer to a full time position with the County.  (Pl.'s Facts ¶¶ 12-13.)

The AmeriCorps OYSI Service Agreement provided for a March 28, 2016 start date and a March 27, 2017 estimated end date.  (Id. ¶ 14; AmeriCorps OYSI Service Agreement (D.E. 66-18) at 1.)  It further provided that Plaintiff would serve 675 hours and receive a bi-weekly living allowance of $312.00.  (Id.)  It further provides that upon completion of his 675 hours, Plaintiff was to receive a $2,182.78 Education Award.  (Id.)

Plaintiff was working out of GMSC's location at 810 Northwest 28th Street in Miami, Florida.[3]  (Def.'s Facts ¶ 15; Moise Dep. at 32:9-17.)  Plaintiff wore his GMSC uniform while performing his AmeriCorps member services at GMSC.  (Def.'s Facts ¶ 17.)  It appears undisputed that Plaintiff was one of five GMSC AmeriCorps mentors, (Def.'s Facts ¶ 18), but Plaintiff states that "he was not just a mentor[,]" (Pl.'s Facts ¶ 18).  In this regard, he cites to his own deposition testimony which states that he was "doing manual hard labor work, teach and mentoring young adults[.]"  (Id. at 30:16-18.)

According to Defendant, in GMSC's chain of command, Plaintiff reported to GMSC Supervisor Andre Miller and Project Manager Robert Parson;[4] Mr. Parson, in turn, reported to GMSC Director Deborah Dorsett.  (Pl.'s Facts ¶ 16.)  Plaintiff states that Dorsett and Parson are employees of the County, (id.); Defendant admits that Dorsett and

---

[3]     Plaintiff purports to dispute this statement, but he testified that he was working at the Greater Miami Service Corps at 810 Northwest 28th Street in Miami.  (Moise Dep. at 32:11-16.)  The segment of the deposition transcript to which Plaintiff cites does not indicate that he was working anywhere else.

[4]     Plaintiff purports to dispute these statements on the ground that Mr. Parson is "Assistant Director" of GMSC, not a "Project Manager."  (Pl.'s Facts ¶ 16.)

Parson are CAHSD employees and states that they "are currently on loan to GMSC," (Def.'s Facts ¶ 16 n.3).

On June 4, 2016, Miller issued Plaintiff an AmeriCorps member Mid-Term Evaluation.   (Def.'s Facts ¶ 19.)   Therein, Miller noted that Plaintiff "adheres to regulations stipulated in the Corps member handbook + AmeriCorps agreement."   (Id.) Miller also marked "yes" to the question: "Has the member thus far met other performance criteria that were clearly committed at the beginning of the service term." (Id. ¶ 19.)  Plaintiff signed the AmeriCorps Mid-Term Evaluation.  (Id.)

On August 12, 2016, Miller issued Plaintiff an AmeriCorps end-term evaluation. (Id. ¶ 20.)  Plaintiff signed the end-term evaluation.  (Id.)

On October 7, 2016, Plaintiff signed the AmeriCorps National Service Trust Exit Form.  (Id. ¶ 21.)   The form states: "This form will end the term of an AmeriCorps member in the National Service Trust . . . ."[5]  (Id.)

On October 10, 2016, Plaintiff sought a second term as a GMSC AmeriCorps member and signed his second AmeriCorps Enrollment Form.[6]  (Def.'s Facts ¶ 22.)  In

---

[5]      Plaintiff purports to dispute this statement on the grounds that he "was told to sign the new forms because it was the only way he would get paid."  (Pl.'s Facts ¶ 21 (citing Moise Dep. at 71:4-12).)   However, the "new forms" Plaintiff was discussing during the cited deposition testimony did not include the AmeriCorps National Service Trust Exit Form.  (See Moise Dep. at 71:4-12 (discussing Deposition Exhibits 1-5 (attached to deposition transcript at D.E. 66-3 at 48-80)).)

[6]      Plaintiff purports to dispute "that the signature on the National Service Trust Enrollment Form is his handwriting."   (Pl.'s Facts ¶ 22 (citing Moise Dep. at 53:2-25).) However, in the portion of Plaintiff's deposition transcript to which he cites, Plaintiff acknowledges three times that he signed the National Service Trust Enrollment Form, (Moise Dep. at 53:12-22); on the other hand, Plaintiff testified that the date is not written in his

his response to Question 8 of this form, Plaintiff indicated that he had previously enrolled in an AmeriCorps program.  (Id.)

On January 30, 2017, Plaintiff was injured when he fell off of a ladder at a GMSC site.  (Id. ¶ 23.)  Plaintiff testified that the County provided him with workers' compensation coverage.  (Id. (citing Moise. Dep. at 128-29).)  He further testified that the doctors assigned through the County's Workers Compensation office that operated on his knees "were being paid to destroy" Plaintiff and he believes that the surgeons intentionally performed the surgery poorly.[7]  (Id.)

On April 7, 2017, McNaught asked Plaintiff to sign his AmeriCorps timesheets, Mid-Term Evaluation, and AmeriCorps Suspension Form, but Plaintiff refused.[8]  (Id. ¶ 24.)  On June 19, 2017, Director Dorsett issued Plaintiff a memorandum directing him to sign the timesheets, Mid-Term Evaluation and AmeriCorps Suspension Form, informed Plaintiff that "timesheets are required to validate member service and eligibility to receive his/her living allowance[,]" reminded Plaintiff that his "member agreement states . . . the requirement to document program attendance by completing and signing a timesheet[,]" and advised Plaintiff that if he continued to refuse to sign the documents in

---

handwriting, and although he believes that he signed it on October 10, 2016, he does not remember for sure.  (Moise Dep. at 53:3 – 54:1.)

[7]     Plaintiff purports to dispute this statement, but he specifically testified that the surgeons "were being paid to destroy" him and that he believes that the surgeons intentionally performed the surgery poorly.  (Moise Dep. at 128:25 – 129:10.)

[8]     Plaintiff purports to dispute this statement on the grounds that he "did not sign those documents until two months after he already commenced his employment."  (Pl.'s Facts ¶ 24.)  It is unclear what documents he is referring to, as he cites no evidence in support of his statement and Defendant maintains that he never signed the documents to which it was referring.  (See Def.'s Facts ¶¶ 24-26.)

violation of AmeriCorps policy requirements then Friday, June 14, 2017 would be his last day of service with GMSC.[9]  (Id. ¶ 25.)  Plaintiff again refused to sign the documents, and his last day at GMSC was June 18, 2017.[10]  (Id. ¶ 26.)

Even though CAHSD Director Lucia Davis-Raiford did not hire Plaintiff as a CAHS employee for a vacant position from County eligibility, and even though Plaintiff signed several documents identifying him as an AmeriCorps member/participant, he asserts that he is not an AmeriCorps member but is instead a Miami-Dade County employee.  (Def.'s Facts ¶¶ 28-30.)  Plaintiff notes that the County provides GMSC with, inter alia, vehicles, payroll services, personnel, recruitment services, records maintenance, benefits, insurance, workers compensation insurance, accounting services, and backgrounds checks, and is also the records custodian for GMSC records.  (Pl.'s Facts ¶ 42.)  It appears undisputed that Plaintiff was assigned a County employee number and that the County issued Plaintiff's paychecks and W-2 forms.   (Id. ¶ 32-33.)  Additionally, Plaintiff drove a County vehicle.  (Id. ¶ 39.)

The County's Personnel Change Document—which is the document used to memorialize an individual's employment status or other personnel changes, (Cuellar Dec. (D.E. 66-1) ¶ 3)—identifies Plaintiff's employment status as "AY-Non-County

---

[9]      Plaintiff purports to dispute this statement, but it is unclear on what grounds.  (See Pl.'s Facts ¶ 25.)  It appears to the Court that he is disputing the validity of Dorsett's statements, not that she made the statements.  (See id.)

[10]     Plaintiff purports to dispute this statement, but it is unclear on what grounds.  (See Pl.'s Facts ¶ 26.)  He merely cites to his objection to Paragraph 25 of Defendant's Statement of Facts in which he states that McNaught backdated the documents she asked him to sign, and in which he appears to dispute whether signing timesheets was a requirement of his AmeriCorps service.  (Pl.'s Facts ¶ 26.)

Employee," which is used to identify an individual who is being paid through the payroll system for a specific administrative reason, but is not a County employee.[11]  (Def.'s Facts ¶ 29.)

Finally, according to Defendant, as an AmeriCorps member Plaintiff could have filed a grievance concerning workplace issues, including his alleged termination from GMSC, but he never did.[12]  (Id. ¶ 31.)

### b.   Procedural history

On March 1, 2017, Plaintiff filed his original Complaint against the County.  (D.E. 1.)  On October 16, 2017, Plaintiff filed the operative Amended Complaint which asserts claims against the County for: (1) wage and hour violations under the FLSA (Count I); (2) retaliation under the FLSA (Count II); age discrimination under the Age Discrimination in Employment Act ("ADEA") (Count III); age discrimination under the Florida Civil Rights Act ("FCRA") (Count IV); retaliation under the ADEA (Count V); retaliation under the FCRA (Count VI); disability discrimination under the Americans with Disabilities Act ("ADA") (Count VII); disability discrimination under the FCRA (Count VIII); wrongful termination under Florida's Workers' Compensation Act ("FWCA"), Fla. Stat. § 440.205 (Count IX); and retaliation under Florida's Whistleblower Act ("FWA"), Fla. Stat. § 448.102 (Count X).

---

[11]     Plaintiff purports to dispute this statement but does not explain the grounds for the dispute or cite any evidence. (See Pl.'s Facts ¶ 29.)

[12]     Plaintiff purports to dispute this statement but does not explain the grounds for the dispute or cite any evidence.  (See Pl.'s Facts ¶ 31.)

On April 25, 2018—over five months after the November 16, 2017 deadline to join parties and amend pleadings, (see D.E. 32)—Plaintiff moved for leave to file a second amended complaint to add GMSC as a defendant. (D.E. 59.) On May 9, 2018, the Court entered an Order denying the motion for leave to amend, finding that Plaintiff had not established good cause under Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) to amend the complaint. (D.E. 63.) Specifically, the Court found that "with diligence, Plaintiff could have added GMSC as a party before the November 16, 2017 deadline to add parties and amend pleadings" because: (1) Defendant's Amended Answer to Plaintiff's Complaint, filed June 5, 2017, states: "The named Defendant, Board of County Commissioners of Miami-Dade County, is not Plaintiff's employer[,]" (D.E. 19 at 2); (2) after the Parties held a settlement conference before Judge Goodman on August 17, 2017, Judge Goodman issued a Post-Hearing Administrative Order noting that "Defense counsel for the County arranged for two representatives from another entity"—GMSC—"which was not named as a defendant, to appear. Defense counsel's position is that this third party is the proper defendant, not the County[,]" (D.E. 39 at 1); (3) at Plaintiff's September 19, 2017 deposition, the County questioned Plaintiff about his service with GMSC; and (4) Plaintiff waited until well-after the deadline for amended pleadings and joinder of parties to propound discovery requests and conduct depositions which ultimately led him to seek leave to amend to add GMSC as a party. (Id.)

On May 11, 2018, the Court entered an Order dismissing Plaintiff's claim for prejudgment interest under the FCRA. (D.E. 64.)

10

On May 25, 2018, Defendant filed the instant Motion for Summary Judgment. (D.E. 67.)

## II.   Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is

11

genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324; see also Fed. R. Civ. P. 56(c).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Id.

**III.    Discussion**

The County argues that it is entitled to summary judgment because: (1) Plaintiff's causes of action under the ADA, FLSA, ADEA, FCRA, and FWCA are claims of an

employee against an employer,[13] Plaintiff was an AmeriCorps participant with GMSC, AmeriCorps participants are not considered "employees" of the federal Government or the program in which they are enrolled, and therefore Plaintiff cannot avail himself of the statutes under which he has sued; (2) if Plaintiff was an employee of some entity, it was GMSC, not Miami-Dade County; (3) Plaintiff failed to exhaust available statutory/administrative remedies; and (4) Plaintiff's claims fail on their merits.  (D.E. 67 at 11-20.)  For the reasons that follow, the Court finds that the uncontroverted evidence establishes that Plaintiff was not an employee of the County and, therefore, that the County is entitled to summary judgment on all of Plaintiff's claims.

The Service Act provides that an AmeriCorps participant "shall not be considered a Federal employee and shall not be subject to the provisions of law relating to Federal employment."  42 U.S.C. § 12655n(b)(1).  The Service Act further provides that "[a] participant shall not be considered to be an employee of the organization receiving assistance under the national service laws through which the participant is engaging in service."  42 U.S.C. § 12511(30)(B).  As such, the relevant case law establishes that AmeriCorps host organizations are not liable to AmeriCorps participants under federal wage and hour or employment discrimination laws.  See Rodriguez v. Corp. for Nat'l & Cmty. Serv., EP-09-CA-041-FM, 2009 U.S. Dist. LEXIS 67534, at *14-16 (W.D. Tex. June 23, 2009) (dismissing with prejudice AmeriCorps participant's claims under the

---

[13]      The County's Motion states that "in paragraph 1 of the Amended Complaint Plaintiff refers to Florida's Whistleblower Act, but there is no corresponding count or allegations stating a claim."  (Mot. at 2 n.2.)  However, Count X of the Amended Complaint asserts a violation of the FWA.  (Am. Compl. ¶¶ 116-120.)

ADA and Rehabilitation Act because "[a]s a participant of the AmeriCorps, [the plaintiff] was not an 'employee' of [the host organization] as a matter of law."); Murray v. Am. Red Cross Capital Chapter, CASE NO. 4:07cv161-RH/WCS, 2008 U.S. Dist. LEXIS 112052, at *6-7 (N.D. Fla. Jan. 1, 2008) (dismissing with prejudice an AmeriCorps participant's claims against a host organization under Title VII and FCRA, finding that "there is no sufficient ground to depart from the plain meaning of the Americorps statute, under which [the plaintiff] was an 'employee' of neither the federal government nor the Chapter.  She was, in short, not an 'employee' at all."); see also Arts for All, Inc., 28-CA-109844, 41 N.L.R.B. 27 (Jan. 15, 2014) (decision of National Labor Relations Board finding that an AmeriCorps participant was not an employee of host organization and therefore her retaliation claim under the National Labor Relations Act should be dismissed); cf. Self v. I Have a Dream Found.-Colo., 552 F. App'x 782, 785 (10th Cir. 2013) (finding that AmeriCorps participants were not employees of the defendant, without the AmeriCorps participants the defendant had fewer than fifteen employees, and without at least fifteen employees the ADA does not apply to the defendant).

Plaintiff submits that the County's argument and the cases cited above are irrelevant because he does not claim to be an employee of, and has not sued, AmeriCorps or GMSC.  (Resp. at 3-5.)  Instead, he argues that a reasonable juror could find that he was a County employee.  (Id. at 7-8, 14-15.)

There are three different tests courts use to determine whether a person is an employee under federal law:

First, there is the common-law agency test, which focuses on a "'hiring party's right to control the manner and means by which the product is accomplished.'" Id. (quoting Cmty. for Creative Non–Violence v. Reid, 490 U.S. 730, 751, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989)).  In addition to looking at control over the manner and means of the work, courts using the common-law agency test consider a number of other factors:

> "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323–24, 112 S. Ct. 1344, 117 L.Ed.2d 581 (1992) (quoting Reid, 490 U.S. at 751–52, 109 S. Ct. 2166, and describing, in an ERISA case, the common-law agency test as containing the above Reid factors).  See also Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 444–45, 123 S. Ct. 1673, 155 L. Ed. 2d 615 (2003) (applying the common-law agency test and Reid factors in an ADA case involving physician-shareholders of a professional corporation).

Second, we have used, in FLSA cases, an "economic realities" test.  See Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 470–71 (11th Cir. 1982).  This test analyzes the extent to which the individual is dependent on the employer.  See Daughtrey, 3 F.3d at 1495.

And third, "in the context of the federal employment discrimination statutes," we have used a hybrid approach.  Id.  Under the hybrid approach, we look at the common-law agency test, "tempered by a consideration of the 'economic realities' of the hired party's dependence on the hiring party."  Id.  See also Cobb v. Sun Papers, Inc., 673 F.2d 337, 340–41 (11th Cir. 1982).

Ashkenazi v. S. Broward Hosp. Dist., 607 F. App'x 958, 961 (11th Cir. 2015).

Plaintiff argues only that a reasonable juror could find that he is a County employee under the economic reality test for purposes of FLSA coverage. (Resp. at 7-8.) Plaintiff does not separately address whether a reasonable juror could find that he was a County employee for purposes of coverage under the ADA, ADEA, FCRA, FWCA, or FWA, other than to state in passing that he has "presented sufficient evidence to permit a jury to find that [he] was employed by Defendant" for purposes of his ADEA claim. (Resp. at 14.) The failure is notable because Defendant argued in its Motion that Plaintiff was not a County employee for purposes of liability under <u>any</u> of Plaintiff's causes of action. (Mot. at 13-15.) Nevertheless, the Court must still find the absence of a genuine issue of fact before it may grant the County summary judgment. See <u>Dixie Stevedores, Inc. v. Marinic Maritime, Ltd.</u>, 778 F.2d 670, 673 (11th Cir. 1985).

### a.   FLSA (Counts I & II)

Plaintiff argues that a reasonable juror could conclude that he was a County employee under the economic reality test for purposes of imposing liability under the FLSA. (<u>Id.</u>) He further argues that even if he is considered an AmeriCorps participant, a reasonable jury could find that the County and GMSC were "joint employers" for purposes of FLSA liability. (<u>Id.</u> at 8-12.) The Court will address these arguments in turn.

### 1.   Whether Plaintiff was an employee of the County

Plaintiff argues that a reasonable juror could find that he was a County employee for purposes of FLSA liability under the "economic reality test." (Resp. at 3-5.)

The FLSA's overtime and minimum wage protections extend only to "employees" within the meaning of the Act. See 29 U.S.C. §§ 206, 207; <u>see also</u> <u>Scantland v. Jeffry</u>

Knight, Inc., 721 F.3d 1308, 1311 (11th Cir. 2013).  Under the FLSA, an "employee" is "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  The term "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . . ."  29 U.S.C. § 203(d).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).

"The Supreme Court has held that courts should apply these terms in light of the 'economic reality' of the relationship between the parties."  Villareal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997) (quoting Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961)).  Some considerations relevant to the economic reality inquiry include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id. (quoting Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983)).  "[N]o single factor is dispositive.  'Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive.  Since economic reality is determined based upon all the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition."  Santos v. Cuba Tropical, Inc., 829 F. Supp. 2d 1304, 1315 (S.D. Fla. 2011) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)).  "[T]he final and determinative question must be whether . . . the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit."  Usery v. Pilgrim Equip. Co., 527

17

F.2d 1308, 1311-12 (5th Cir. 1976);[14] see also Scantland, 721 F.3d at 1311 (observing that the test for whether a worker is an employee under the economic reality test is "whether that relationship demonstrates dependence").

"A determination of employment status under the FLSA . . . is a question of law[.]" Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996); see also Aimable v. Long and Scott Farms, 20 F.3d 434, 440 (11th Cir. 1994). Subsidiary findings are questions of fact. Patel v. Wargo, 803 F.2d 632, 634 & n.1 (11th Cir. 1986).

The uncontroverted evidence establishes that Plaintiff was not dependent on the County—economically or otherwise—and therefore the County was not Plaintiff's employer for purposes of FLSA liability.

It is undisputed that in 2015, GMSC entered into a Subgrantee Agreement with TCN to host AmeriCorps' OYSI Initiative. (Def.'s Facts ¶ 10.) GMSC is a Florida 501(c)(3) not for profit corporation that is governed by a Board of Directors. (Id. ¶ 6.) GMSC receives federal, state, and local funding and has a yearly budget of about $2.45 million; it received a federal grant of $232,093 to host the AmeriCorps OYSI Initiative. (Id.)

TCN's CEO Mary Ellen Sprenkel submitted an uncontroverted Declaration in which she attests that "Miami-Dade County does not host AmeriCorps programs or have any relationship with TCN. TCN does not have a relationship or sub-grantee agreement

---

[14]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

with Miami-Dade County to host AmeriCorps programs." (Sprenkel Decl. (D.E. 66-5) ¶ 10.)

On March 21, 2016, Plaintiff signed a Member Orientation Verification Form indicating that he had attended an AmeriCorps orientation at GMSC for AmeriCorps' OYSI Initiative. (Id. ¶ 11.) On March 28, 2016 Plaintiff signed the AmeriCorps Enrollment Form, the GMSC Criminal History Check Consent & Disclosure Form, the AmeriCorps Determination of Economic Status Form, and the AmeriCorps OYSI Service Agreement. (Id. ¶¶ 12-13.) The AmeriCorps OYSI Service Agreement provides for a March 28, 2016 start date and March 27, 2017 estimated end date. (Id. ¶ 14; AmeriCorps OYSI Service Agreement (D.E. 66-18) at 1.) It further provided that Plaintiff would serve 675 hours and receive a bi-weekly living allowance of $312.00. (Id.) It further provided that upon completion of his 675 hours, Plaintiff was to receive a $2,182.78 Education Award. (Id.)

Plaintiff worked out of GMSC's location at 810 N.W. 28th Street in Miami. (Moise Dep. at 32:16 – 33:7) Plaintiff testified that there is a sign on the building identifying it as Greater Miami Service Corps. (Id. at 32:25 – 33:2.) Plaintiff wore his GMSC uniform while performing his AmeriCorps member services at GMSC. (Def.'s Facts ¶ 17.) It appears undisputed that Plaintiff was one of five GMSC AmeriCorps mentors, but Plaintiff states that "he was not just a mentor." (Pl.'s Facts ¶ 18.) He testified that he was "doing manual hard labor work, teaching and mentoring young adults[.]" (Moise Dep. at 30:16-18.)

It is undisputed that pursuant to a 2012 agreement, the County provides GMSC management and administrative support including payroll services, records maintenance, vehicles, personnel, recruitment services, benefits, insurance, workers compensation insurance, accounting services, and background checks for GMSC participants.  (Def.'s Facts ¶ 7; Dorsett Dep. at 12:2 13:2; 23:3-23; Agreement between Miami-Dade County and GMSC of Jan. 24, 2012 ("Agreement," D.E. 66-11).)   However, it is further undisputed that GMSC reimburses the County for these contracted services.  (Def.'s Facts ¶ 7; Dorsett Dep. at 26:7-25.)   Under the Agreement, GMSC is responsible for reimbursing the County for the contracted services up to $2 million per year.  (D.E. 66-11 at 9.)

Although it is undisputed that the County has the authority to hire and fire County employees, (See Def.'s Facts ¶ 27; Pl.'s Facts ¶ 27), there is no evidence that the County ever hired Plaintiff.  It is undisputed that pursuant to the County's Personnel Rules for Classified Service, County employment status can only be conferred by a County department director upon an applicant who is interviewed and selected from a County eligibility list.  (Def.'s Facts ¶ 27.) It is further undisputed that only CAHSD Director Lucia Davis-Raiford has the authority to hire CAHSD employees, and she can only hire applicants that have been interviewed and selected from a qualified eligibility list approved by the County's Human Resource Department.  (Def.'s Facts ¶ 2.)  Plaintiff testified at his deposition that he only spoke with Director Davis-Raiford once, which was at his graduation, (Moise Dep. at 123); Director Davis-Raiford did not offer Plaintiff employment with the County during that conversation, (see id. at 123-126).

20

Paragraph 29 of Defendant's Statement of Facts asserts that Plaintiff was not a County employee because he was not selected by a County Department Director for a vacant position from a County eligibility list, (id. ¶ 29), and Paragraph 30 asserts that CAHSD Director Davis-Raiford did not hire Plaintiff as a CAHS employee, (id. ¶ 30).  In this regard, Defendant submitted the Declaration of Arleene Cuellar, Director of the Miami-Dade County Human Resources Department, who averred:

> 7.     I have reviewed the County's recruitment records for the years 2016-2017.  Mr. Moise was not selected from a County eligibility and or recruitment list.  Additionally, CAHSD Director Davis-Raiford did not issue Mr. Hans Moise a letter offering him County employment.  As such, Mr. Moise was not and is not a County employee.

> 8.     I have also reviewed Hans Moise's PCD under "Employment Status" which states "AY-Non County Employee."  The "AY: Non-County Employee" status is used to identify an individual who is being paid through the payroll system for a specific administrative reason, but is not a County employee.   Mr. Moise's PCD reflects that he is not a County employee.

> 9.     The Greater Miami Service Corps is not a County department.

(D.E. 66-1 ¶¶ 7-9.)  Ms. Cuellar's Declaration is uncontroverted.

In fact, although Plaintiff's Response to Defendant's Statement of Facts purports to dispute the facts asserted in Paragraphs 29 and 30, he fails to explain the basis of the dispute or cite evidence giving rise to a genuine issue of material fact; indeed, he cites no evidence at all.  (See Pl.'s Facts ¶¶ 29-30.)  Pursuant to Federal Rule of Civil Procedure 56, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Similarly, Local Rule 56.1 provides that the non-movant's statement of material facts asserting the existence of a genuine issue to be tried "shall . . . [b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court[.]"  S.D. Fla. L.R. 56.1(a)(2).  As the Eleventh Circuit has observed, "[t]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor."  Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (emphasis added) (citing Patterson & Wilder Constr. Co. v. United States, 226 F.3d 1269, 1273 (11th Cir. 2000)).

Plaintiff has cited no record evidence or shown that the evidence to which Defendant cites fails to establish the absence of a genuine dispute; he merely states that the facts asserted in Paragraphs 29 and 30 are disputed.  That is not enough to establish a genuine issue of material fact.  See id.

With respect to supervision, work schedules, and conditions of employment, it is undisputed that Plaintiff reported to GMSC Supervisor Andre Miller and Project Manager Parson (although, according to Plaintiff, Parson held the position of "Assistant Director of GMSC").  (Def.'s Facts ¶ 16; Pl.'s Facts ¶ 16.)  Parson reported to GMSC Director Deborah Dorsett.  (Def.'s Facts ¶ 16.)  Dorsett and Parson are County employees

that are currently on loan to GMSC.  (Id. at ¶ 16 n.3.)  There is no evidence that the County had any control over Plaintiff's work schedule or conditions of employment.

It is further undisputed that on June 4, 2016, Miller issued Plaintiff an AmeriCorps member Mid-Term Evaluation indicating that Plaintiff was adhering to the regulations stipulated in the Corps member handbook and AmeriCorps agreement.  (Id. ¶ 19.)  On August 12, 2016, Supervisor Miller issued Plaintiff an AmeriCorps end-term evaluation.  (Id. ¶ 20.)  Plaintiff signed both of these evaluations.  (Id. ¶¶ 19-20.)  After Plaintiff's first term with AmeriCorps ended, he signed a second AmeriCorps enrollment form that indicated that Plaintiff had previously enrolled in an AmeriCorps program.  (Id. ¶¶ 21-22.)

Under the totality of the circumstances, the Court finds that no reasonable juror could find that Plaintiff "was so dependent upon the [County] that he come[s] within the protection of the FLSA . . . ."  Usery, 527 F.2d at 1311-12.  The only reasonable conclusion that can be drawn from the record evidence is that Plaintiff was an AmeriCorps member/participant.

## 2.   Joint Employer

Plaintiff makes the alternative argument that even if he was an AmeriCorps participant, a reasonable juror could find that GMSC and the County were his joint employers.  (Resp. at 8-12.)  The Eleventh Circuit has observed that "[a]n employee may have more than one employer, and 'whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the

[FLSA] depends upon all the facts in the particular case.'"  Layton v. DHL Exp. (USA), Inc., 686 F.3d 1172, 1175 (11th Cir. 2012) (quoting 29 C.F.R. § 791.2(a)).

In its Reply, the County argues that Plaintiff cannot create a factual issue by raising a joint employer allegation for the first time in its response to the County's Motion for Summary Judgment, especially considering that the Court denied Plaintiff leave to file a Second Amended Complaint to add the allegation that GMSC was Plaintiff's employer.  (Reply at 3 (citing O'Brien v. NCL (Bahamas) Ltd., 288 F. Supp. 3d 1302, 1306 n.3 (S.D. Fla. 2017) (citing Pysca Panama, S.A. v. Tensar Earth Techs., Inc., 625 F. Supp. 2d 1198, 1254 (S.D. Fla. 2008))).)

It is well settled that a plaintiff may not raise a new claim in response to a motion for summary judgment.  Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).  Federal courts also routinely hold that a plaintiff may not assert a new theory supporting an existing claim in response to a motion for summary judgment.  See Mahgoub v. Miami Dade Cmty. Coll., No. 05-11520, 2006 WL 952278, at *2 (11th Cir. 2006) (unpublished); O'Brien, 288 F. Supp. at 1306 n.3; Edwards v. Niles Sales & Serv., Inc., 439 F. Supp. 2d 1202, 1224-26 (S.D. Fla. 2006).  For example, in Mahgoub, the plaintiff asserted a Title VII retaliation claim in his complaint, but then asserted a new theory of Title VII retaliation for the first time in his response to the defendant's motion for summary judgment.  2006 WL 952278, at *2.  The district court granted the defendant summary judgment and the Eleventh Circuit affirmed, finding, inter alia, that the theory of liability was not asserted in the complaint and the plaintiff did not seek leave to amend to add the theory of liability.  Id.

Similarly, in O'Brien, the plaintiff's amended complaint asserted a claim for negligence based on three distinct theories.  288 F. Supp. 3d at 1306.  The plaintiff's own expert witness issued a "Supplemental Report" which essentially negated each of the plaintiff's theories of negligence and asserted a new theory of negligence not raised in the pleadings.  Id. at 1306 n.3.  The Court struck the Supplemental Report pursuant to Federal Rule of Civil Procedure 37(c)(1) because it violated the mandates of Rule 26(a) and (e), which govern a party's expert disclosures.  See O'Brien v. NCL (Bahamas) Ltd., CASE NO. 16-23284-CIV-LENARD/GOODMAN, 2017 WL 6949261, at *3-7 (S.D. Fla. Oct. 13, 2017) (Order Granting Motion to Strike Expert's Supplemental Report). Nevertheless, at the summary judgment stage, the plaintiff relied heavily on the expert's new theory of liability.  O'Brien, 288 F. Supp. 3d at 1306 n.3.  The Court granted the defendant summary judgment on the new theory because it was not pled in the amended complaint.  Id. (citing Edwards, 439 F. Supp. 2d at 1224-26 (granting summary judgment in favor of defendant on theory of liability first raised in the plaintiff's response to the defendant's motion for summary judgment, and collecting cases)); Pycsa Panama, 625 F. Supp. 2d at 1254 ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion for summary judgment.") (quoting Southwick Clothing LLC v. GFT (USA) Corp., No. 99-10452, 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004)).

Here, too, the Court finds that Plaintiff is attempting to impermissibly assert new facts and theories in his response to Defendant's Motion for Summary Judgment.  The

25

Amended Complaint does not contain a theory asserting that the County and GMSC were joint employers for FLSA (or any other) purposes; in fact, the Court denied Plaintiff's motion for leave to amend the complaint to add GMSC as a defendant, finding that, "with diligence, Plaintiff could have added GMSC as a party before the November 16, 2017 deadline to add parties and amend pleadings."[15]   (See D.E. 63.).   Accordingly, Defendant is entitled to summary judgment on Plaintiff's "joint employer" theory.   O'Brien, 288 F. Supp. 3d at 1306 n.3; Edwards, 439 F. Supp. 2d at 1224-26.

For these reasons, the County is entitled to summary judgment on Plaintiff's claims under the FLSA (Counts I and II).

### b.      ADA, ADEA, and FCRA (Counts III through VIII)

The Eleventh Circuit applies the hybrid economic reality test to determine whether a worker is an employee under the ADEA and ADA.   See Yacovella v. Apparel Imports, Inc., Case No. 15-23477-ClV-O'SULLIVAN, 2016 WL 4625620, at *3 (S.D. Fla. Sept. 6, 2016).   The hybrid test also applies to Title VII claims, see Lockett v. Allstate Ins. Co., 364 F. Supp. 2d 1368, 1372-73 (M.D. Ga. 2005), and decisions construing Title VII are

---

[15]      Additionally, although the Amended Complaint asserts that "Defendant [Miami Dade County]" is a covered 'employer' and an enterprise under the FLSA[,]" (D.E. 43 ¶ 8), it does not assert that GMSC is a covered employer for purposes of FLSA enterprise liability. However, even if the Amended Complaint named GMSC as a defendant and asserted that GMSC was a covered employer under the FLSA, GMSC would likely be entitled to summary judgment on the grounds that an AmeriCorps participant is not considered an employee of the host organization.   Rodriguez., 2009 U.S. Dist. LEXIS 67534, at *14-16 (dismissing with prejudice AmeriCorps participant's claims under the ADA and Rehabilitation Act because "[a]s a participant of the AmeriCorps, [the plaintiff] was not an 'employee' of [the host organization] as a matter of law."); Murray, 2008 U.S. Dist. LEXIS 112052, at *6-7 (dismissing with prejudice an AmeriCorps participant's claims against a host organization under Title VII and FCRA, finding that "there is no sufficient ground to depart from the plain meaning of the Americorps statute, under which [the plaintiff] was an 'employee' of neither the federal government nor the Chapter. She was, in short, not an 'employee' at all.").

applicable to FCRA claims, Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

Under the hybrid approach, the Court looks to common-law master-servant agency principles, "tempered by a consideration of the 'economic realities' of the hired party's dependence on the hiring party." Cobb, 673 F.2d at 340-41. Factors bearing on whether an individual qualifies as an employee under common-law master-servant agency principles include:

> the hiring party's right to control the manner and means by which the product is accomplished. . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Darden, 503 U.S. at 323-24 (quoting Reid, 490 U.S. at 751-52) (internal quotation marks omitted). "[T]he common-law element of control is the principal guidepost" for the Court's agency analysis, Clackamas, 538 U.S. at 448, and is reflected in many of the more specific Darden/Reid factors, Weary v. Cochran, 377 F.3d 522, 525 (6th Cir. 2004).

Applying the hybrid test to the uncontroverted evidence compels the conclusion that Plaintiff was not a County employee for purposes of the ADA, ADEA, or FCRA. Quite simply, Plaintiff was not economically dependent on the County and there was no agency relationship between the Parties.

As explained above, it is undisputed that Plaintiff enrolled in AmeriCorps' OYSI Initiative which was hosted by GMSC, a 501(c)(3) nonprofit organization.  (Def.'s Facts ¶ 6, 12-13.)  "Miami-Dade County does not host AmeriCorps programs or have any relationship with TCN.  TCN does not have a relationship or sub-grantee agreement with Miami-Dade County."  (Sprenkel Decl. ¶ 10.)  The County did not hire Plaintiff and no reasonable juror could find that Plaintiff was economically dependent on the County. (See supra Section III(a)(1).)

Furthermore, applying the relevant agency principles to the uncontroverted evidence establishes that there was no master-servant relationship between the Parties. First and foremost, Plaintiff has presented no evidence that the County controlled or had the right to control Plaintiff's conduct, which is the "principal guidepost" for determining whether a common law master-servant relationship existed.  Clackamas, 538 U.S. at 448; see also Restatement (Second) of Agency § 220(1) ("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control"). Although the issue of control is not dispositive, summary judgment is appropriate where there is no evidence that the alleged employer controls the means or manner in which the plaintiff performs his day-to-day work, and there is little other evidence of an agency relationship.  Lambersten v. Utah Dep't of Corrs., 79 F.3d 1024, 1028-29 (10th Cir. 1996) (affirming summary judgment for alleged employer under hybrid test in a Title VII case where there was "no evidence in the record from which a finder of fact could conclude the [alleged employer] controlled the means or the manner in which plaintiff

28

performed her day-to-day work"); see also Marie v. Am. Red Cross, 771 F.3d 344, 356-
57 (6th Cir. 2014) (noting that the employer's ability to control job performance is one of
the most important factors and affirming dismissal of Title VII claims where there was
essentially no evidence that the American Red Cross controlled its volunteers' job
performance).

As to the location of the work, it is undisputed that Plaintiff worked out of the
GMSC building located at 810 Northwest 28th Street in Miami, Florida.  (Moise Dep. at
32:9-17.)

The duration of the relationship between the Parties factor is irrelevant because
there was no legally cognizable relationship between Plaintiff and the County.

Because there was no relationship between the Parties, it is also irrelevant whether
Plaintiff had discretion over when and how long to work, or whether Plaintiff played any
role in hiring or paying assistants.

Next, Plaintiff has presented no evidence that the work he performed is part of the
County's regular business.  The only information Plaintiff provides regarding his duties is
that he was required "to drive Defendant's vehicle to pick up young adults and take them
to a park to perform work for Defendant."  (Pl.'s Facts ¶ 39 (citing Moise Dep. at 45:23 –
46:6.)  The deposition testimony to which he cites indicates that he "was going to Job
Corps in Miami Gardens.  We were going to about 12 parks, litter-picking and making
various tasks in the parks."  (Moise Dep. at 45:19-21.)

However, Plaintiff provided no evidence that the parks in the City of Miami
Gardens are owned or controlled by Miami-Dade County, or that driving young adults

around to various parks and "litter-picking" is part of the County's regular business.  The Court further notes that Plaintiff's description of his job is perfectly consistent with AmeriCorps' OYSI Initiative which "provides young adults meaningful community service experience."  (Sprenkel Decl. ¶ 6.)

The only factors that arguably have any evidentiary support are: (1) the source of the instrumentalities—there is evidence that Plaintiff drove a County van during his workday, (Pl.'s Facts ¶ 39 (citing Moise Dep. at 46:4-5)), (2) the provision of employee benefits—there is evidence that the County provided AmeriCorps participants with, e.g., workers' compensation insurance, (Pl.'s Facts ¶ 42 (Dorsett Dep. at 12:2-25 – 13:25; 23:3-23; 25:23-25; 26:5-24; 68:1-13); and (3) the tax treatment of the hired party—the County issued AmeriCorps participants' paychecks and W-2 forms, (Moise Dep. 28:10-11; Dorsett Dep. at 40:9-12).  However, the uncontroverted evidence establishes that the County provided those services to GMSC pursuant to the January 24, 2012 Agreement, and GMSC reimbursed the County up to $2 million per year for those services.  (See Agreement, D.E. 66-11.)   Director Dorsett testified that the County provides "those administrative services, those fleet [van] services, the payroll services, the benefits that the county may generate expenses on behalf of the nonprofit, then the nonprofit pays back the county for those services." (Dorsett Dep. at 12:17-21 (emphasis added); see also id. at 26:10-13 ("[I]n the event there is an accident, either with the automobile or with staff, we can use the county's insurance, and then we reimburse the county for any expenses incurred for using that insurance."); id. at 68:4-7 (Q. So the cooperative agreement provides that the county provides workers' compensation for the members?

A. Correct.").  Thus, even in the light most favorable to Plaintiff, evidence that Plaintiff drove a County van, received workers' compensation insurance from the County, and received his paychecks and W-2 forms from the County does not evince a master-servant agency relationship between the County and Plaintiff, it simply reflects the County's contractual obligations under its Agreement with GMSC to provide those services to GMSC's AmeriCorps' participants.  (See D.E. 66-11.)

In sum, when applying common-law agency principles—tempered by a consideration of the economic realities of Plaintiff's (non)dependence on the County—to the uncontroverted evidence, the Court finds that no reasonable juror could find that Plaintiff was a County employee for purposes of liability under the ADA, ADEA, and FCRA.  Therefore, the County is entitled to summary judgment on Counts III through VIII.  See Wilde v. Cty. of Kandiyohi, 15 F.3d 103, 106 (8th Cir. 1994) (affirming summary judgment in favor of the alleged county employer on Title VII claims under hybrid test where, in the light most favorable to the plaintiff, the county exercised some control over the plaintiff but, "considering the working relationship as a whole," the plaintiff was an independent contractor).

### c.    FWCA (Count IX)

Count IX alleges "Wrongful Termination" under Florida's Workers' Compensation Act, Fla. Stat. § 440.205, which prohibits an "employer" from terminating an "employee" because the employee submitted a valid claim for workers' compensation. (Am. Compl. ¶¶ 103-115.)  Under the FWCA, "employee" means "any person who receives remuneration from an employer for the performance of any work or service

31

while engaged in any employment under any appointment or contract for hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . . ." Fla. Stat. § 440.02(15)(a).  Thus, "Florida law requires that for a person to be considered an employee for workers' compensation purposes, a contract of employment, either express or implied, must exist." Jenks v. Bynum Transport, Inc., 104 So. 3d 1217, 1221 (Fla. Dist. Ct. App. 2012).

As detailed in Section III(a)(1) & (b), supra, Plaintiff was not a County employee because he was not engaged in employment under an appointment or contract for hire by the County.  Specifically, Plaintiff failed to rebut the County's evidence establishing that Plaintiff was not a County employee because he was never selected by a County Department Director for a vacant position from a County eligibility list, (id. ¶ 29), and because Director Davis-Raiford did not hire Plaintiff as a CAHS employee, (id. ¶ 30). (See supra Section III(a)(1).)  Plaintiff has cited no evidence evincing a written or implied contract of employment between himself and the County.

Because there is no evidence that Plaintiff worked for the County under appointment or contract for hire, Plaintiff is not a County employee for purposes of the FWCA.  Therefore, the County is entitled to summary judgment on Count IX.

### d.    FWA (Count X)

The purpose of Florida's Whistleblower Act is "to prevent retaliatory action against employees and persons who disclose certain types of government wrongdoing to appropriate officials." Rustowicsz v. N. Broward Hosp. Dist., 174 So. 3d 414, 419 (Fla. Dist. Ct. App. 2015) (citing Fla. Stat. § 112.3187(2)-(7); Rice-Lamar v. City of Fort

Lauderdale, 853 So. 2d 1125, 1131-32 (Fla. Dist. Ct. App. 2003)).  Under the FWA, "'[e]mployee' means a person who performs services for, and under the control and direction of, or contracts with, an agency or independent contractor for wages or other remuneration." Fla. Stat. § 112.3187(3)(b).

As discussed in the previous subsection, there is no evidence of a contractual relationship between the County and Plaintiff, and as discussed in Section III(b), supra, Plaintiff has presented no evidence that the County controlled or directed Plaintiff's conduct.  Consequently, the uncontroverted evidence establishes that Plaintiff was not a County employee for purposes of the FWA.  Therefore, the Count is entitled to summary judgment on Count X.

## IV.    Conclusion

Because the uncontroverted evidence establishes that Plaintiff was not an employee of the County, Defendant is entitled to summary judgment on each of Plaintiff's claims.  Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    Defendant's Motion for Summary Judgment (D.E. 67) is **GRANTED**;

2.    Final Judgment shall be entered separately;

3.    All pending motions are **DENIED AS MOOT**; and

4.      This case is now **CLOSED**.

             **DONE AND ORDERED** in Chambers at Miami, Florida this 22nd day of

August, 2018.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

34